UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOEL F. HANDLER,

    Plaintiff/Appellant,

v.

VINCENT JOHNSON, SR., and SHERRY MARTIN JOHNSON,

    Defendants/Appellees.

No. 14 C 2581

Judge Sara L. Ellis

## OPINION AND ORDER

Plaintiff/Appellant Joel Handler represented Defendants/Appellees Vincent Johnson, Sr. and Sherry Martin Johnson (the "Johnsons") in litigation against the Chicago Board of Education. Receiving only partial payment for his services, he obtained a default judgment for the remainder—$21,702.40—and then sought a declaration that the judgment amount was not dischargeable in the Johnsons' Chapter 7 bankruptcy proceeding. The parties settled Handler's adversary complaint, with the Johnsons agreeing to pay $7,500 through installment payments due the 15th of every month. If Handler did not receive a timely payment, Handler had the option under the settlement agreement to move to reinstate the case and have judgment entered for $21,702.40, offset by the amount already paid by the Johnsons. Handler did not receive the Johnsons' February 2014 payment in accordance with the settlement agreement and so filed a motion to reopen the adversary case and enter judgment for the entire judgment amount. The bankruptcy court denied Handler's motion, leading to this appeal. Because the Court finds that any breach of the settlement agreement was immaterial, the bankruptcy court's decision is affirmed.

# BACKGROUND

In 2008, the Johnsons engaged Handler to represent them in connection with a suit against the Chicago Board of Education. The engagement agreement required the Johnsons to pay Handler for the time he spent on their matter, in addition to all other reasonable costs incurred in connection with the matter, regardless of the suit's outcome. The Johnsons made some payments to Handler, but at the conclusion of the representation, a $21,702.40 balance remained outstanding.

To collect on the outstanding balance, Handler filed suit against the Johnsons in state court on August 23, 2011. He obtained a default judgment for $21,702.40 on October 7, 2011. But Handler learned on October 11, 2011 that the Johnsons had filed a Chapter 7 bankruptcy petition on September 29, 2011. Handler then filed an adversary complaint against the Johnsons on December 27, 2011, objecting to the dischargeability of the Johnsons' debt to him. After some motion practice, the parties settled Handlers' adversary complaint. The Johnsons agreed to pay Handler $7,500 in monthly installments of $100 each, to be received by Handler by the 15th of each month. The settlement agreement further provided:

> In the event that HANDLER does not receive a timely payment in any given month, the entire amount of $21,702.40 less any applicable monies paid by the JOHNSONS to HANDLER shall be due immediately. HANDLER can then move to reinstate the case and the JOHNSONS agree that a judgment will be entered against them for the outstanding monies due and owing, costs and interest retroactive to the date the judgment was entered in the Circuit Court of Cook County. Moreover, the JOHNSONS agree to be responsible for all costs, including HANDLER's time spent in order to collect the outstanding monies due and owing starting from the date of default.

App. F at 3. The adversary proceeding was dismissed on January 17, 2013, with the bankruptcy court retaining jurisdiction to enforce the settlement agreement's terms.

On May 9, 2013, Handler filed a motion to reopen the adversary proceeding and enter judgment as set forth in the settlement agreement because he received the Johnsons' April 2013 payment on April 16, 2013, one day after it was due. Although the payment was dated April 8, the envelope was postmarked April 15. The bankruptcy court denied Handler's motion, finding that the agreement did not say that time is of the essence and that any breach was immaterial.

Handler did not receive the Johnsons' February 2014 payment by the 15th of that month either. He sent a letter to the Johnsons' counsel on February 15, informing him that the Johnsons now owed Handler $21,702.40 plus interest pursuant to the terms of the settlement agreement. On February 20, Handler filed a motion to reopen the adversary proceeding and enter judgment in his favor. Handler acknowledged in the motion that Ms. Johnson left him a voicemail on February 16 to inform him that she would send the payment on February 17, but Handler stated he had not yet received the payment. At the March 11, 2014 hearing, the Johnsons' counsel explained that Ms. Johnson was hospitalized prior to February 15, which was the reason for the late payment, and Handler represented that he had received the payment—a check dated February 17—by the time of the hearing. The bankruptcy court again denied Handler's motion, noting again that the agreement did not include a provision that time was of the essence and that the Johnsons had made the payment.[1] This appeal followed.

## STANDARD OF REVIEW

On appeal, this Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). Mixed questions of law and fact are also reviewed *de novo*. *Id.*

---

[1] The bankruptcy court warned the Johnsons, however, that if they were late in the future and Handler filed another motion to reopen the case, the court would consider granting Handler's motion or at least assessing attorneys' fees against the Johnsons.

**ANALYSIS**

Handler argues that the bankruptcy court erred in finding that the settlement agreement did not contain a "time is of the essence" clause, as the settlement agreement clearly required that Handler receive payments by the 15th of each month and specified that if payment was not received, the case was to be reopened and judgment entered in Handler's favor for $21,702.40 plus interest. The Johnsons respond that the parties did not include the phrase "time is of the essence" in the agreement, the fact that the payments were to be made on an installment basis negates any argument that time was indeed of the essence, and any breach did not prejudice Handler.

Handler contends that the bankruptcy court was wrong to base its decision on the fact that the settlement agreement did not contain the words "time is of the essence," as these words need not appear in a contract to make timely performance an enforceable requirement. *See Arnhold v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 699 (7th Cir. 2002) ("Timely performance often is an absolute requirement even if the contract does not contain the talismanic phrase 'time is of the essence'; it is well-settled that 'the intention of the parties as expressed by the agreement controls[.]'" (quoting *Will v. Will Prods. Inc.*, 441 N.E.2d 343, 346, 109 Ill. App. 3d 778, 65 Ill. Dec. 430 (1982))). The parties did include language that each payment must be received by the 15th of the month and that if it was not, Handler could move to reopen the adversary proceeding and have judgment entered in his favor, suggesting that timely performance was intended.

But even assuming that time was of the essence in the parties' settlement agreement, that does not end the analysis because Illinois law instructs that the Court is to "inquire into the situation of the parties and the underlying circumstances to determine whether a delay in performance resulted in a 'material breach.'" *Asset Recovery Contracting, LLC v. Walsh Constr.*

*Co. of Illinois*, 980 N.E.2d 708, 726, 2012 IL App (1st) 101226, 366 Ill. Dec. 615 (2012) (quoting *Chariot Holdings, Ltd. v. Eastmet Corp.*, 505 N.E.2d 1076, 1082, 153 Ill. App. 3d 50, 106 Ill. Dec. 285 (1987)). If the breach was not material, then the non-breaching party is not entitled to rescind the agreement and is not excused from its own performance under the agreement.[2] *See Arnhold*, 284 F.3d at 700; *Capri Sun, Inc. v. Beverage Pouch Sys., Inc.*, No. 97 C 1961, 2000 WL 1036016, at *4 (N.D. Ill. July 21, 2000) ("In Illinois, a purely technical and immaterial breach of a contractual obligation will generally be insufficient to warrant contract rescission."). Materiality is a factual question, *Sahadi v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983); *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 96, 225 Ill. 2d 52, 310 Ill. Dec. 274 (2006), which the bankruptcy court resolved in the Johnsons' favor. The Court considers "(1) the intent of the parties with respect to the

---

[2] The non-breaching party may be entitled to damages for a minor breach, but those damages must be related to the breach itself. *See Finch v. Illinois Cmty. Coll. Bd.*, 734 N.E.2d 106, 110, 315 Ill. App. 3d 831, 248 Ill. Dec. 398 (2000); *Beverage Realty, Inc. v. Chatham Club, LLC*, No. 01 C 1396, 2003 WL 444572, at *7 (N.D. Ill. Feb. 21, 2003) (party could sue for "damages it may have sustained from delayed sales of lots on the Property or from other reasonable costs of reassuring buyers" but it could not avoid its own obligations under the agreement). Handler did not seek damages specifically related to the delay in receiving the Johnsons' February 2014 payment, instead seeking essentially to undo the settlement agreement and reestablish his entitlement to the default judgment he had obtained in state court.

To the extent Handler could argue that he is merely seeking specific enforcement of a liquidated damages provision, the Court notes that it is questionable whether the provision is even enforceable, as it resembles a penalty instead of reasonable liquidated damages. *See GK Dev., Inc. v. Iowa Malls Fin. Corp.*, 3 N.E.3d 804, 815–16, 2013 IL App (1st) 112802, 378 Ill. Dec. 239 (2013) (liquidated damages clauses are generally valid where "(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained, and (3) actual damages would be uncertain in amount and difficult to prove," but "for reasons of public policy, a liquidated damages clause which operates as a penalty for nonperformance will not be enforced"). Because the provision provides the same remedy—that Handler may move to reopen the case and have judgment entered in the amount of $21,702.40 plus interest against the Johnsons—regardless of the extent of the delay in the payment, the provision reads more like a penalty than a liquidated damages provision. *See id.* (finding holdback unenforceable "where it fails to distinguish between a minor delay in permit approval and a complete failure of the construction project"); *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir. 1985) ("When a contract specifies a single sum in damages for any and all breaches even though it is apparent that all are not of the same gravity, the specification is not a reasonable effort to estimate damages; and when in addition the fixed sum greatly exceeds the actual damages likely to be inflicted by a minor breach, its character as a penalty becomes unmistakeable.").

5

disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." *Arnhold*, 284 F.3d at 700. If the contract would have been made without the inclusion of the disputed provision, then the breach is not material but rather minor as long as the party performed within a reasonable period of time. *Id.* Even if the factfinder concludes that the parties intended for the payment date to be a material provision of the agreement, "equity will refuse to enforce such a provision when to do so would be unconscionable or would give one party an unfair advantage over the other." *Id.* (quoting *Sahadi*, 706 F.2d at 197). The Court considers factors including "whether the breach defeated the bargained-for objective of the parties; whether the non-breaching party suffered disproportionate prejudice; and whether undue economic inefficiency and waste, or an unreasonable or unfair advantage would inure to the non-breaching party." *Id.* at 701.

Although the bankruptcy court did not engage in a detailed analysis in denying Handler's motion, the Court agrees that the slight delay in Handler's receipt of the Johnsons' February 2014 payment was an immaterial breach of the parties' settlement agreement. The Court does not have enough information to conclude whether or not the parties would have entered into the settlement agreement had the provision regarding the date by which payments were to be received every month by Handler not been included. Judging from Handler's reaction to the two late payments, however, it appears that this clause was at least material to Handler.

But even so, the Court finds the February 2014 breach of the provision to have been immaterial, considering the equitable factors and circumstances surrounding the breach. Handler agreed to settle his claim in exchange for a guaranteed stream of payments, to be received once a month by a certain date. The fact that he received the February 2014 payment several days late, particularly in light of the fact that Ms. Johnson was hospitalized in the days prior to February

6

15, did not prejudice Handler or defeat the parties' bargained for objective—to ensure that Handler received a guaranteed stream of payments in exchange for allowing the Johnsons to exit bankruptcy with significantly reduced debt. Handler did not establish that he suffered any prejudice as a result of the delayed February 2014 payment, instead admitting that he had received the Johnsons' payment by the time of the hearing on his motion to reopen. *See Markoff-Fitzgerald Ass'n v. Sable Corp.*, No. 85 C 9184, 1990 WL 37669, at *7 (N.D. Ill. Mar. 14, 1990) (finding of materiality inappropriate where undisputed facts showed that non-breaching party suffered no harm from purported breach); *cf. McBride v. Pennant Supply Corp.*, 623 N.E.2d 1047, 1051–52, 253 Ill. App. 3d 363, 191 Ill. Dec. 457 (1993) (finding breach was material where breaching party did not conduct evaluation for almost three years, noting that "[i]t is not as if McBride merely went without his money for a few months or even a year"). As for the last factor, the Johnsons represented in the bankruptcy court that the payment was not made on time because of Ms. Johnson's unexpected hospitalization. Handler admitted that he received a voicemail message from Ms. Johnson explaining that the payment would be forthcoming on February 16 and that the check was dated February 17. The bankruptcy judge found that the fact that Handler received the payment within days of its due date was reasonable and that his request to reinstate the default judgment in light of having received such payment was unreasonable. The Court cannot find this to be erroneous, as the Johnsons made a reasonable effort to perform their obligations under the contract considering that Ms. Johnson was hospitalized unexpectedly in the days before payment was due and took prompt action to make the payment once she left the hospital. *See Arnhold*, 284 F.3d at 707 (in considering whether the non-breaching party would experience an unreasonable or unfair advantage, the Court should look at "(1) whether the breaching party used reasonable efforts to perform its

7

contractual obligations; and (2) whether the parties contemplated that the breaching party would forfeit its contractual rights if it committed the type of breach that is at issue"). Considering the parties' intent to resolve their dispute and allow the Johnsons to come out of bankruptcy, and the fact that the payment was received, albeit several days late due to an unexpected hospitalization, the Court agrees with the bankruptcy court that the Johnsons' February 2014 breach was immaterial.[3]

## CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment is affirmed.

Dated: July 22, 2015

SARA L. ELLIS
United States District Judge

---

[3] Although the Court agrees with the bankruptcy court that the Johnsons' February 2014 breach was immaterial and does not warrant reopening the adversary proceeding and entering judgment as Handler requests, the Court cautions the Johnsons that they should ensure that Handler receives their monthly payments before the 15th of each month to prevent any future disputes with respect to the settlement agreement.

8